UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:14-CV-441-CHL

TERRY LEE CAPSHAW,                                                        **Plaintiff,**

**v.**

COMMISSIONER OF SOCIAL SECURITY,                          **Defendant.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is the complaint of Plaintiff Terry Lee Capshaw filed on June 19, 2014. (DN 1.)   In his complaint, Capshaw seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g) (2012) ("Any individual, after any final decision of the Commissioner of Social Security . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . .").   Capshaw, who is proceeding *pro se*, filed what appears to be a Fact and Law Summary on March 27, 2015.   (DN 16.)   The Commissioner filed a Fact and Law Summary on April 27, 2014.   (DN 17.)   The parties have consented to the jurisdiction of a magistrate judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed.   (*See* DN 10.)   Thus, this matter is ripe for review.   For the reasons set forth below, the Court affirms the final decision of the Commissioner.

**I.      BACKGROUND**

Capshaw filed applications for disability insurance benefits and supplemental security income on December 13, 2010.   (R. 145-52.)   Capshaw alleged that he became disabled on November 3, 2010 as a result of a fractured C2 vertebra in his neck and chronic migraine

1

headaches.  (*Id*. at 160.)  Administrative Law Judge Ronald Mather ("the ALJ") conducted a hearing on October 26, 2012 in Louisville, Kentucky.  (*Id*. at 25.)  Capshaw was present and represented by Allison Zoeller.  (*Id*.)  Gail Franklin, a vocational expert, also testified at the hearing.  (*Id*.)  The ALJ held the record open for three weeks following the hearing, or until November 16, 2012, to allow Capshaw's attorney to file additional medical records.  (*Id*. at 51.)  While Capshaw's attorney later submitted additional medical records to the Appeals Council, it does not appear that these medical records were submitted to or considered by the ALJ.  (*Id*. at 209-10, 325-30.)

In a decision dated January 25, 2013, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, and, in doing so, made the following findings:

1. Capshaw met the insured status requirements of Sections 216(i) and 223(d) of the Social Security Act, Pub. L. No. 74-271, 49 Stat. 620 (codified as amended at 42 U.S.C. §§ 416(i) and 443 (2012)) through December 31, 2013.  (*Id*. at 13.)

2. Capshaw has not engaged in substantial gainful activity since November 3, 2010, the alleged onset date.  (*Id*.)

3. Capshaw has the following severe impairments:  alcohol dependence by history; depressive disorder, not otherwise specified; status-post cervical fracture; headache; and hypertension.  (*Id*.)

4. Capshaw does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*. at 14.)

5. Capshaw has the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that he cannot climb ladders, ropes, or scaffolds; can occasionally crawl; cannot lift overhead or perform work with overhead reaching; should avoid vibratory tools and platforms; should avoid all hazards; cannot perform high production quota work or highly detailed work; limited to simple, repetitive routine work; and there should be no extreme upward looking (leaning head back).  (*Id*. at 15.)

2

6. Capshaw is unable to perform any past relevant work.  (*Id*. at 19.)

7. Capshaw was born on February 20, 1970 and was forty years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  (*Id*.)

8. Capshaw has at least a high school education and is able to communicate in English. (*Id*.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Capshaw is "not disabled" whether or not Capshaw has transferable job skills.  (*Id*.)

10. Considering Capshaw's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.  (*Id*.)

11. Capshaw has not been under a disability, as defined in the Social Security Act, from November 3, 2010 through the date of the decision.  (*Id*. at 20.)

Capshaw timely requested an appeal to the Appeals Council on or about March 18, 2013, seeking review of the ALJ's decision.  (*Id*. at 7.)  The Appeals Council denied Capshaw's request for review on April 16, 2014.  (*Id*. at 1-4.)  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 422.210(a); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision).  Capshaw filed this action on June 19, 2014.  (DN 1.)

## II.    ANALYSIS

The Social Security Act authorizes payment of disability insurance benefits and supplemental security income to persons with disabilities.  Social Security Act, Disability Insurance Benefits and Supplemental Security Income, 42 U.S.C. §§ 401-34, 1381-85 (2012). An individual shall be considered "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

3

of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2014).

### A.      Standard of Review

In conducting its review, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Sec'y of Health and Human Servs.*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson,* 471 F.2d 1265 (6th Cir.1972)). Rather, the Court's review is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and the correct legal standards were applied. 42 U.S.C. § 405(g); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011). If the answer is "yes," then the Court may not even inquire as to whether the record could support a decision the other way. *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion . . . ." *Id.* at 108; *see also Cotton v. Sec'y of Health and Human Servs.*, 2 F.3d 692, 695 (6th Cir. 1993) (internal citation and quotation marks omitted). Therefore, "[a] reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart*, 710 F.3d at 374.

### B.      Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

> 1)      Is the claimant engaged in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the

4

answer is "no," proceed to the next step.

2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to perform basic work activities?  If the answer is "no," the claimant is not disabled.  If the answer is "yes," proceed to the next step.

3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1 to Subpart P of Part 404 of this chapter? If the answer is "yes," the claimant is disabled.  If the answer is "no," proceed to the next step.

4)   Does the claimant have the RFC to return to his or her past relevant work?  If the answer is "yes," then the claimant is not disabled.  If the answer is "no," proceed to the next step.

5)   Even if the claimant cannot perform past relevant work, does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," the claimant is disabled.

*Id*.

The claimant bears the burden of proof with respect to the first four steps.  *Jordan v. Comm'r of Soc. Sec*., 548 F.3d 417, 422-23 (6th Cir. 2008).   The burden shifts to the Commissioner at the fifth step to prove that there are available jobs in the national economy that the claimant is capable of performing.  *Id*. at 423.  The claimant, however, always retains the burden of proving lack of RFC.  *Herr v. Comm'r of Soc. Sec*., 203 F.3d 388, 392 (6th Cir. 1999).

## C.    Capshaw's Contentions

Capshaw does not identify specific findings of the ALJ with which he disagrees.  It appears, however, that Capshaw's main contention is with respect to the ALJ's RFC finding at

step four in the sequential evaluation process.  Specifically, Capshaw appears to claim that the RFC finding did not take into account his own statements about his pain and other symptoms related to his C2 cervical spine fracture, which render him unable to work.  In addition, Capshaw claims that he can no longer afford his blood pressure medication and therefore it remains high; he is unable to perform past work as an electrician; and he has been in several alcohol abuse treatment programs in the past.  The Court will address each of Capshaw's contentions below.

### 1.    Subjective allegations regarding pain and symptoms related to C2 fracture

At the fourth step in the sequential evaluation, the ALJ found that Capshaw has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that he cannot climb ladders, ropes, or scaffolds; can occasionally crawl; cannot lift overhead or perform work with overhead reaching; should avoid vibratory tools and platforms; should avoid all hazards; cannot perform high production quota work or highly detailed work; is limited to simple, repetitive routine work; and there should be no extreme upward looking (leaning head back).  (R. 15.)  Capshaw appears to be arguing that this RFC finding overstates his ability to work by not taking into account his subjective allegations regarding his pain and symptoms.  To start, Capshaw states that his condition has worsened since his accident.  (Doc. 16, p. 2.)  In particular, Capshaw alleges that his "neck pain is extreme more times than not."  (*Id*.)  Capshaw further alleges that his "mobility is very limited" and that the injections he was receiving did not help.  (*Id*.)  Capshaw also claims that his headaches are so bad at times that he gets "dizzy and lose[s] balance."  (*Id*.)

The RFC finding is the ALJ's ultimate determination of what a claimant can still do in a work setting despite his or her physical and mental limitations.  20 C.F.R. §§ 404.1545(a),

416.945(a), 416.946.  The RFC finding is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record about what a claimant can do despite limitations caused by his or her physical and mental impairments.   20 C.F.R. §§ 404.1529, 404.1545(a), 416.929, 416.945(a), 416.946; SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); SSR 96-5p, 1996 WL 374183, at *4-5 (July 2, 1996).  "Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis."  SSR 96-5p, 1996 WL 374183, at *4.  Thus, in making the RFC finding, the ALJ must necessarily (1) assign weight to the medical source statements in the record; and (2) consider the descriptions and observations of the claimant's limitations as a result of his or her physical and mental impairments from the claimant and the claimant's family and friends.  20 C.F.R. § 404.1545(a)(3), 416.945 (a)(3).  It is the second category that is seemingly at issue here.

In determining whether a claimant is disabled, the Commissioner must "consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §§ 404.1529(a), 416.929(a).  Thus, in determining whether a claimant suffers from debilitating pain and/or other symptoms, the ALJ must first examine whether there is objective medical evidence of an underlying medical condition.  *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986); SSR 96-7p, 1996 WL 374186, at *2.  If so, then the ALJ must next determine "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity

7

that it can reasonably be expected to produce the alleged disabling pain." *Id*.  While the ALJ must consider all of a claimant's statements about his symptoms, including pain, a claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged.   20 C.F.R. §§ 404.1529(a), 416.929(a).   Thus, in assessing a claimant's residual functional capacity the Commissioner must necessarily consider the subjective allegations of the claimant and make credibility findings. *See id*.; SSR 96-7p, 1996 WL 374186, at *2-*3.

Here, the ALJ found that there is objective medical evidence of physical and mental impairments, including a cervical C2 spine fracture, depressive disorder, hypertension, headache, and alcohol dependence by history.  (R. 13, 16-18.)   However, the ALJ concluded that, while these medically determinable impairments could reasonably be expected to cause the alleged symptoms, Capshaw's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible.  (*Id*. at 18.)   There is substantial evidence in the record to support the ALJ's determination in this regard.

First, it is clear that the ALJ did as required, considering Capshaw's subjective complaints of pain and other symptoms; nonetheless, the ALJ concluded that they were not entirely substantiated based on the objective medical evidence.   Following a motor vehicle accident on November 3, 2010 that resulted in a bilateral C2 facet fracture with extension into the transverse foramina in the cervical spine, a halo was placed during Capshaw's hospital stay to ensure proper alignment and healing.  (R. 16, 223, 228-30.)    As the ALJ noted, while Capshaw has alleged that his pain has worsened since that time, Capshaw's follow-up visits

showed that the halo placement surgery was generally successful as his condition continued to improve and the fracture was healing.[1]  (*Id*. at 18.)  In February 2011, Capshaw was doing well and walking well.  (*Id*. at 16, 270.)  In April 2011, a CT showed alignment of the fracture line fracture fragments was entirely stable and there was some evidence of interval healing compared to a previous exam.  (*Id*. at 16, 268.)  In June 2011, the C2 fracture appeared to be healing, and an x-ray showed good alignment.  (*Id*. at 16, 261, 264.)  Additionally, in July 2011, while noting that Capshaw had "severely limited" range of motion, a CT showed good ossification of a C2 hangman's fracture.  (*Id*. at 16, 260.)  Capshaw had some pain management in the form of nerve blocks in January and February 2012, which did not give him relief from neck pain, but did result in some decreased headaches.  (*Id*. at 17, 282-85)  Because the nerve blocks were largely unsuccessful, Capshaw was referred back to his primary care physician.  (*Id*. at 17, 296.)  The ALJ noted that Capshaw has had generally conservative treatment with pain management and his family physician since that time.  (*Id*. at 18.)  In sum, due to the relatively conservative treatment and apparent continued healing of the C2 fracture, there is substantial evidence to support the ALJ's conclusion that Capshaw's complaints of pain and other symptoms were not entirely substantiated by the objective medical evidence.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (noting that *Duncan* requires that subjective claims of disabling pain be supported by objective medical evidence).  And, the question to answer is not whether substantial evidence contradicts the ALJ's finding; rather, it is whether the finding is supported by substantial evidence, and it is here.  *See id*. at 1235.

---

[1]Capshaw states that there was never any surgery performed on his "neck fracture because it was too risky."  (Doc. 16, p. 2.)  Capshaw states that instead a "halo was drilled into [his] head."  (*Id*.)  The medical record shows that Capshaw did have halo placement surgery during his hospital stay following the November 2010 motor vehicle accident.  (R. 228-30.)  It is clearly this surgery to which the ALJ refers in his decision.  There is no record that any additional surgical procedure to correct the C2 fracture occurred or was even anticipated.

Second, a plaintiff's level of daily activity is a factor which the Administrative Law Judge may consider in determining the extent to which pain is of disabling severity.   20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Bogle v. Sec'y of Health and Human Servs.*, 998 F.2d 342, 348 (6th Cir. 1993); *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("As a matter of law, the Administrative Law Judge may consider household and social activities in evaluating complaints of disabling pain.").   The ALJ concluded that Capshaw's daily activities were not limited to the extent one would expect given his complaints of disabling symptoms and limitations.   (R. 18.)   The ALJ noted that Capshaw can cook, wash dishes, wash clothes, occasionally sweeps, and grocery shops.   (*Id.*)   Capshaw alleged that he needs help making a bed and cannot dust; carrying two gallons of water hurts; and he can walk a half to a whole mile on a good day and two blocks on a bad day.   Capshaw also estimated that he can stand one to two hours but would then need to sit twenty to thirty minutes; he also stated that some days he could not stand for ten minutes.   Capshaw estimated that he could sit twenty to thirty minutes.    These limits on activity are not indicative of disabling pain.   *See Crisp v. Secretary of Health and Human Servs.*, 790 F.2d 450, 453 (6th Cir. 1986) (finding that claimant leading a relatively normal life despite suffering from some genuine physical problems and pain).   This is also consistent with the ALJ's observation that Capshaw has not generally received the type of medical treatment one would expect for a totally disabled individual.   (R. 18.)   In sum, "[a] ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."   *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997).   That is exactly what the ALJ did here, making a credibility determination based on Capshaw's own description of his household and social

10

activities compared to his subjective allegations of pain and other symptoms. The ALJ's credibility determination was supported by substantial evidence, comports with applicable law, and is therefore afforded great deference. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("In evaluating the claimant's subjective complaints of pain an administrative law judge may properly consider the claimant's credibility, and we accord great deference to that credibility determination.").

Finally, it is important to note that, in determining RFC, the ALJ found that the record did not contain any opinion from a treating or examining physician indicating that Capshaw is disabled or even has limitations greater than is listed in the decision. *Duncan*, 801 F.2d at 853 ("Although Duncan's treating physician and several other physicians noted that Duncan claimed to be having pain, none of the physicians diagnosed the pain as severe or disabling."). The ALJ considered the opinions of Dr. Lisa Beihn, a state agency medical consultant. Dr. Beihn opined that Capshaw could perform light work, but can never climb ladders, ropes, or scaffolds; can occasionally crawl; can occasionally reach overhead bilaterally; and should avoid all exposure to hazards. (*Id*. at 19, 91-93.) Because this assessment was generally consistent with the treatment notes, the ALJ gave it great weight. And, in fact, the ALJ's RFC finding is more restrictive than that described by Dr. Beihn. (*See* R. 15.) The ALJ also considered the opinions of Dr. Breslin, a state agency psychological consultant with respect to the effect of Capshaw's mental impairment. Dr. Breslin indicated that Capshaw can understand and remember one to two step instructions and many more detailed ones; maintain an acceptable work schedule; can adapt to the pressures of medium to low stress work; can avoid hazards, travel independently, and make future plans; can interact appropriately with the public, peers, and supervisors in the work place.

11

(*Id.* at 18, 93-95.)   Because this assessment was consistent with the substantial evidence of record, it was also given great weight by the ALJ and likewise incorporated into the RFC finding of light work with physical limitations.

In sum, the ALJ determined that the medical record and Capshaw's testimony did not show that he suffers disabling pain or pain to the extent that he testified.  And, in the absence of detailed corroborating medical evidence, it was the ALJ's duty to resolve the issue of Capshaw's credibility regarding his subjective allegations of pain and other symptoms.  Because tolerance of pain is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the claimant, the conclusion of the ALJ, who has the opportunity to observe the claimant's demeanor, "should not be discharged lightly."  *Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) (quoting *Beavers v. Secretary of Health, Educ. and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).  Therefore, for the reasons detailed, the undersigned concludes that the ALJ's findings regarding Capshaw's credibility, and therefore the resulting RFC, are supported by substantial evidence.  *See, e.g.*, *Blacha*, 927 F.2d at 230-31 ("Without detailed corroborating medical evidence, this court will generally defer to the ALJ's assessment."); *Gray v. Comm'r of Soc. Sec.*, No. CIV.A.08-317-DLB, 2009 WL 1811536, at *5 (E.D. Ky. June 25, 2009) ("Because the record lacks evidence which would clearly support Plaintiff's allegations that his pain prevents him from engaging in any work-related activities, this Court defers to the ALJ's assessment of Plaintiff's credibility as it is supported by substantial evidence in the administrative record.").

### 2.      High blood pressure because cannot afford medication

Capshaw states that he can no longer afford his medication and therefore his blood pressure remains high.  (DN 16, p. 2.)  The ALJ found that Capshaw's hypertension was a severe impairment and noted that he failed to take medication for it.  (R. 13, 17.)  Specifically, the ALJ found that Capshaw had been treated for hypertension starting in February 2012 through Family Health Centers and prescribed Toprol XL. (*Id*. at 17, 290-91.)  Other blood pressure medications were added, and in April 2012, his hypertension had stabilized.  (*Id*. at 293-95.)  The dosage of Toprol XL was later increased in June and July 2012.  (*Id*. at 297, 299.)  In August 2012, Capshaw's dentist remarked that his blood pressure was high and records indicate that Capshaw was noncompliant in picking up a refill of his hypertension medication.  (*Id*. at 314-15.)  In November 2012, Capshaw was prescribed Accupril in addition to the Toprol XL.  (*Id*. at 319.)  There is no indication that Capshaw reported financial reasons for his failure to comply with taking his blood pressure medication.  Furthermore, as the Commissioner has pointed out, the website for Family Health Centers states, "Don't let the cost of your prescriptions prevent you from getting the medicines you need to be healthy."  Family Health Centers, http://www.fhclouisville.org/medicalhome/pharmacy/  (last visited Sept. 10, 2015). Consequently, if anything, Capshaw's failure to obtain medication undermines his credibility of claims of potentially disabling symptoms from hypertension.  *Russell v. Sec'y of Health & Human Servs.*, 921 F.2d 277, 1990 WL 209576, at *3 (6th Cir. Dec. 19, 1990) (unpublished opinion) ("Plaintiff's unwillingness to undergo treatment which could relieve his symptoms undermines the credibility of his claims of disabling symptoms from hypertension.").

13

Putting aside the fact that Capshaw claims that he cannot afford hypertension medication, there is simply no evidence that a diagnosis of hypertension alone, even untreated, or in combination with his other impairments rendered Capshaw disabled.  *See McKnight v. Sec'y of Health and Human Servs.*, 927 F.2d 241, 242 (6th Cir. 1990) (finding that affordability is addressed after a claimant is found to be under a disabling condition); *see also Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. Feb. 3, 2004) (unpublished opinion) ("The issue of poverty as legal justification for failure to obtain treatment does not arise unless a claimant is found to be under a disabling condition.") (citing *McKnight*).  This is because a claimant must establish not only the existence of a medically-diagnosed impairment, he must also prove its severity and functional impact.  *See Higgs v. Sec'y of Health and Human Servs.*, 880 F.2d 860, 863 (6th Cir. 1988) (noting that burden is on claimant to prove severity of impairments); *Foster v. Sec'y of Health and Human Servs.*, 853 F.2d 483, 489 (6th Cir. 1988) (finding that mere proof of impairment is not enough; claimant must prove that the impairment was disabling).  Here, Capshaw has not shown, through record evidence or otherwise, that the hypertension, alone or in combination with the other impairments, is so severe that it prevents him from working.  *See, e.g.*, *Anderson v. Sec'y of Health and Human Servs.*, 911 F.2d 731, 1990 WL 116539, at *7 (6th Cir. Aug. 13, 1990) (unpublished opinion) ("Though various doctors have confirmed Anderson's hypertension, ulcer, osteoarthritis of the spine, anxiety, hiatus hernia, and chronic obstructive lung disease, the record contains little incontrovertible objective evidence of an underlying condition that would cause severe work-related functional limitations.").  Consequently, the Court finds that the Commissioner's decision should not be reversed on this basis.

14

### 3.      Cannot return to past relevant work as an electrician

Capshaw also contends that his medical records show his inability to perform past work as an electrician.  (Doc. 16, p. 3.)  This issue is not in dispute, as the ALJ actually found that Capshaw is unable to perform past relevant work as an electrician.  (R. 19.)

### 4.      History of alcohol abuse

Capshaw notes that he has a history of alcohol abuse.  (DN 16, p. 3.)  This fact was considered by the ALJ in his decision.  (R. 17.)  The ALJ noted that there is no evidence of current alcohol abuse and that Capshaw has been able to perform activities of daily living as well as work despite his past use.  (*Id*.)  Furthermore, Capshaw testified that he has slowed down considerably on his alcohol consumption, only drinking about a six-pack per month.  (*Id*. at 18, 42.)  It is clear that the ALJ considered Capshaw's past alcohol abuse and determined that it had no effect on his current situation so as to render him disabled.  The Court cannot find any fault with the ALJ's determination in this regard.  Indeed, the ALJ's conclusion is soundly supported by substantial evidence in the record, including Capshaw's own testimony.

### D.      Medical Records Submitted to the Appeals Council

As a final matter, while this was not raised by Capshaw, the Court notes that the record contains medical records submitted by Capshaw to the Appeals Council after the issuance of the ALJ's decision.  (R. 325-30.)   It is unclear whether the Appeals Council considered these medical records in denying Capshaw's appeal.  Even if the Appeals Council had considered these medical records, the Court "cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec*., 96 F.3d 146, 148 (6th Cir. 1996).   The Court can, however, "remand the case for further administrative

15

proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id.* at 148.  The medical records submitted to the Appeals Council were dated July 17, 2012, September 19, 2012, and November 8, 2012.  (R. 325-29.)  The ALJ held the record open for three weeks following the October 26, 2012 hearing, or until November 16, 2012, to allow Capshaw's attorney to file additional medical records.  (*Id.* at 51.)  Because all of these medical records were created and thus presumably available before November 16, 2012, they could have been submitted to the ALJ.  Therefore, Capshaw has not demonstrated good cause because the medical records do not constitute "new" evidence.  *See, e.g.*, *Guill-McCory v. Comm'r of Soc. Sec.*, No. 5:14-cv-54, 2014 WL 6977886, at * 1 (W.D. Ky. Dec. 9, 2014) (finding that failure to submit evidence to the ALJ in a timely manner was not good cause).  Even if Capshaw had demonstrated good cause, he cannot demonstrate that the medical records are material.  New evidence is material if there is a reasonable probability that it would have changed the outcome of the prior proceeding.  *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988) (*per curiam*).  New evidence which reflects a claimant's aggravated or deteriorating condition is not material and does not warrant a remand.  *Id.* at 712; *Oliver v. Sec'y of Health and Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (finding that new evidence that may have revealed deteriorating condition was not material because it did not reveal information about claimant's ability to perform light work).  At most, Capshaw's medical records demonstrate that his condition *may* be deteriorating.  (*See, e.g.*, R. 329 ["The patient is going to be referred to the Spine Clinic for review of his recent MRI which was in October, 2012, which showed a possible C2 non-healing fracture."]).  Therefore, the Court declines to remand this case for further

administrative proceedings in light of the medical records submitted after the ALJ's decision was rendered. *See Hensley v. Comm'r of Soc. Sec.*, 214 F. App'x 547, 551 (6th Cir. Jan. 23, 2007) (unpublished opinion) (finding that nothing in the brief or record indicated why claimant was unable to acquire and present evidence to the ALJ at or prior to the hearing and therefore claimant was not entitled to remand).

## III.   CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

(1) The final decision of the Commissioner of Social Security is **AFFIRMED** and this action is **DISMISSED** with prejudice.

(2)   A final judgment will be entered separately.

cc:  Counsel of record
     *Pro se* plaintiff

17